O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CWTM CORPORATION d/b/a § | |
| C & W EXPORTS, LC, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. H-04-2857 |
| v. § | |
| § | |
| AM GENERAL LLC, § | |
| § | |
| Defendant. § | |

MEMORANDUM AND ORDER

Pending are Defendant AM General, LLC's Motion for Summary Judgment (Document No. 40) and Motion to Dismiss (Document No. 50). After carefully considering the motions, responses, replies, surreplies, and the applicable law, the Court concludes as follows:

I.   Background

This diversity action arises from the collapse of a distributor-manufacturer relationship between Plaintiff CWTM Corporation, d/b/a C & W Exports, LC, and Defendant AM General LLC. Defendant manufactures military vehicles commonly known as "Humvees" or "Hummers." Between 1989 and 2001, Plaintiff served as Defendant's general distributor for Humvees and Humvee parts to the Mexican military, specifically, the Secretaria De La Defense Nacional ("SDN"). Plaintiff would purchase the vehicles/parts from Defendant, and then resell them to the SDN at a profit.  *See*

Document No. 40 ex. A, at 11-12; ex. B, at 68, 73. The parties documented this relationship through a series of Exclusive Distributor Agreements (the "Agreements"), each of which expired after a two-year term. *See* id. ex. A, at 9-10; ex. C ex. 1.[1] According to Plaintiff, the parties would regularly conduct themselves as if an Agreement were in effect even after it had expired, and Defendant would eventually produce a new Agreement that was backdated to the expiration of the previous one. *See* Document No. 1 ex. F ¶ V.

The most recent Agreement between the parties (the "1998 Agreement") expired under its own terms on April 1, 2000. *See* Document No. 40 ex. B, at 137; ex. C ex. 1. Although Defendant never sent a new Agreement to Plaintiff for execution, Plaintiff alleges that Defendant "assured" Plaintiff on many occasions "that the contract would again be renewed for a two-year period," and business between the parties continued in accord with their previous course of dealing. *See* Document No. 1 ex. F ¶ V. Indeed, not long after the 1998 Agreement had expired, SDN allegedly contacted Plaintiff to obtain a price quote on a potential purchase of approximately 67 specially configured Humvees. *See* id. ¶ VI.[2]

---

[1] Defendant's dealings with Plaintiff were principally with Plaintiff's President, Roberto Cardini ("Cardini").

[2] Although Plaintiff issued its own price quotes to SDN, it is uncontroverted that those price quotes depended upon the price quotes Plaintiff itself received from Defendant.

On September 11, 2000, Defendant gave to Plaintiff a price quotation of $4,731,391 to fill an order with an expiration date of October 31, 2000.  *See* Document No. 40 ex. C ex. 5.  This price quote was identified as part of "AM General Proposal No. 2000-301." *See* id.[3]  On October 19, 2000, Defendant issued to Plaintiff a revised price quote of $4,723,551.  *See* id. ex. 6.  The revised quote, which was part of "AM General Proposal No. 2000-301R1," also contained a revised expiration date of February 28, 2001.  *See* id.

In January, 2001, Defendant's employee Edward Pomeroy ("Pomeroy") allegedly received a phone call from Lieutenant Colonel Herrera Ochavez of the SDN ("Col. Ochavez").  *See* id. ex. C ex. 8. According to Defendant, Col. Ochavez explained, on behalf of one General Gustavo Guttierrez Martinez, that: (1) the SDN was concerned and upset over its inability to obtain parts through Cardini and Plaintiff in a timely fashion;  (2) the SDN was not receiving adequate support from Plaintiff, which appeared to be "abusing its position as [the] sole source for HUMVEE parts in Mexico"; and (3) the SDN needed to resolve its problems quickly because requisitions were imminent.  *See* id.  Pomeroy's supervisor,

---

[3] On September 29, 2000, Defendant sent a letter to Plaintiff authorizing Plaintiff "to represent AM General in all matters pertaining to AM General Proposal 2000-320 to the Mexican Army." Document No. 40 ex. C. ex. 7.  As Cardini admitted in his deposition testimony, AM General Proposal 2000-*320* was a spare parts proposal distinct from AM General Proposal 2000-*301*.  *See* id. ex. B, at 161.  Defendant sent no analogous authorization letter to Plaintiff with regard to AM General Proposal 2000-301.  *See* id.

Greg Daniels ("Daniels"), suggested that Pomeroy reduce the complaint to writing on official letterhead. *See* id. ex. 9.

On February 12, 2001, Defendant received a letter from the Mexican Embassy (the "Embassy letter"). *See* id. exs. E-F. The Embassy letter, which was addressed to Daniels and signed by one Brigadier General Gilberto Hernandez Andreu, claimed that the SDN was experiencing problems with Cardini's ability to fulfill the SDN's needs, as well as his disposition toward doing so. *See* id. The Embassy letter then stated that the High Command of the Mexican Army and Air Force requested Defendant to designate another representative to substitute for Cardini in servicing the SDN-and that "we consider your attention and response to our request as urgent." *See* id. According to Plaintiff, Defendant never informed it of the Embassy letter, even though Defendant was fully aware that Cardini would travel to Mexico City on February 15, 2001, to continue negotiating with the SDN on the proposed Humvee sale. *See* Document No. 43 ex. F ¶ 7.

On February 27, 2001, the day before Defendant's revised price quote to Plaintiff (and thus Plaintiff's price quote to the SDN) was set to expire, Cardini received a letter from the SDN requesting an extension of the quote until April 15, 2001, "since, for internal reasons, we have been unable to finalize this acquisition." *See* Document No. 43 ex. C. Cardini passed the request on to Defendant that same day. *See* Document No. 43 ex. F

¶ 12.  On March 4, 2001, Cardini received a letter from Defendant dated March 2, 2001.  *See* Document No. 40 ex. C. ex. 11; No. 43 ex. F ¶ 13.  The letter denied Cardini's request for an extension of the price quote and stated that Defendant had decided not to renew the 1998 Agreement, which had expired on April 1, 2000.  *See* Document No. 40 ex. C. ex. 11.  The letter further noted that all of Defendant's outstanding proposals to Plaintiff for vehicles and/or parts expired as of March 4, 2001, and that Defendant did not intend to extend those proposals or issue new ones in the future.  *See* id.  Plaintiff contends it later discovered that as early as February 27th, Defendant had representatives in Mexico City negotiating with SDN for the sale of the Humvees and by March 8th had developed a written proposal offering to sell the same vehicles that Plaintiff "had spent thousands of hours during the previous six months and thousands of dollars negotiating to sell."  Document No. 43 ex. F ¶ 14.  Although the sale was ultimately effected through an entity known as Scorpion, Inc. ("Scorpion"), Plaintiff contends that Scorpion was merely a "straw man" that never engaged in substantial negotiations on the sale and had no prior business relationship with Defendant.  *See* Document No. 43, at 4-5.  According to Plaintiff, Plaintiff stood to make a profit of $558,205.20 if it had finalized the sale with the SDN, but instead Defendant merely paid Scorpion a $158,000 commission, thereby saving $400,205.20.  *See* id.

Approximately a year after the foregoing events, Plaintiff filed suit against Defendant and Scorpion in Texas state court, asserting claims for tortious interference with a contractual relationship, business disparagement, breach of common law duty of loyalty, breach of good faith, quantum meruit, breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, conspiracy, promissory estoppel, and unjust enrichment. *See* Document No. 1 ex. F. Defendants removed the case to federal court in Laredo, and the Honorable George P. Kazen transferred the case to the Houston Division after dismissing Scorpion as fraudulently joined. *See* Document Nos. 25- 26, 31-32. Defendant now moves for summary judgment on all of Plaintiff's claims.

## II. Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See*

id. at 2553-54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998)(citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993)(citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

#### A. Motion for Summary Judgment

Although Defendant moves for complete summary judgment, Plaintiff responds by defending only four of its claims: tortious interference with a prospective contract, quantum meruit, promissory estoppel, and unjust enrichment. *See* Document No. 43. Defendant has shown itself entitled to summary judgment on Plaintiff's undefended claims, leaving the four disputed claims for consideration.

##### 1. Tortious Interference with a Prospective Contract

To prevail on this claim, Plaintiff must show the following:

> (1) a "reasonable probability" that the plaintiff would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's conduct.

Finlan v. Dallas Indep. Sch. Dist., 90 S.W.3d 395, 412 (Tex. App.--Eastland 2002, pet. denied); *see* Ash v. Hack Branch Distrib. Co., Inc., 54 S.W.3d 401, 413-14 (Tex. App.--Waco 2001, pet. denied);

Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726-27 (Tex. 2001); Bradford v. Vento, 48 S.W.3d 749, 757 (Tex. 2001).

Thus, Plaintiff bears the burden of showing, *inter alia*, that Defendant committed an independently tortious or unlawful act which prevented Plaintiff from achieving a contractual relationship with the SDN. *See* Finlan, 90 S.W.3d at 412.[4] It is uncontroverted that what prevented Plaintiff from achieving its desired contract with the SDN was Defendant's refusal to extend its (Defendant's) price quote beyond February 28, 2001. *See* Document No. 43, at 14. Defendant's refusal to extend a price quote beyond the date previously agreed does not breach any duty owed to Plaintiff that would be actionable as a recognized tort. Although Defendant had extended price quotes in the past, "[c]onduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations. . . ." Sturges, 52 S.W.3d at 726. Indeed, when challenged to identify Defendant's independently tortious act, Plaintiff merely referred to its quantum meruit, promissory estoppel, and unjust enrichment claims. *See* Document No. 43, at 14. These claims, however, are extra-contractual theories of recovery, not descriptions of actionable tortious conduct by Defendant. Plaintiff fails to raise

---

[4] The plaintiff need not be able actually to prove an independent tort, but rather to "prove that the defendant's conduct would be actionable under a recognized tort." Sturges, 52 S.W.3d at 726.

9

a genuine issue of material fact that Defendant committed an independently tortious act, and Defendant is therefore entitled to summary judgment on Plaintiff's claim for tortious interference with a prospective contract.[5]

2. <u>Quantum Meruit</u>

"Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received." <u>Heldenfels Bros., Inc. v. City of Corpus Christi</u>, 832 S.W.2d 39, 41 (Tex. 1992). To recover on a theory of quantum meruit, a plaintiff must show that: (1) valuable services were rendered or materials were furnished; (2) for the person sought to be charged; (3) which were accepted by the person sought to be charged, used, and enjoyed by him; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing, expected to be paid by the person sought to be charged. *See* <u>id.</u>; <u>Kona Tech. Corp. v. Southern Pac. Transp. Co.</u>, 225 F.3d 595, 606 (5th Cir. 2000); <u>Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.</u>, 787 S.W.2d 942, 944 (Tex. 1990).

Defendant argues that Plaintiff cannot establish the fourth element of its quantum meruit claim, because Plaintiff relied on

---

[5] The evidentiary objections related to other elements of Plaintiff's tortious interference claim (*e.g.*, Plaintiff's objections to the Embassy letter) are therefore DENIED as moot.

resale rather than commission to obtain compensation.[6]  Thus, Defendant argues, Plaintiff knew that if it failed to make the Humvee sale to SDN, it would not get paid.  *See* Document No. 44, at 12-13.  Under Texas law, however, "the expected payment does not have to be monetary; it may be any form of compensation."  <u>Vortt</u>, 787 S.W.2d at 945.[7]  Indeed, the Fifth Circuit has upheld a quantum meruit claim made by a distributor who, like Plaintiff, generated income by purchasing various products from a manufacturer for resale.  *See* <u>Infra-Pak v. Carlson Stapler & Shippers Supply, Inc.</u>, 803 F.2d 862 (5th Cir. 1986).  The distributor had attempted to market certain of the manufacturer's machines to a third party, but was never able to close the sale.  *See* <u>id.</u> at 863.  When the manufacturer later sold a different machine to that third party

---

[6] In fact, Defendant asserts that Plaintiff cannot establish any of the elements of a quantum meruit claim, but Defendant presents argument only on the fourth element.

[7] In <u>Vortt</u>, the Texas Supreme Court held that plaintiff Vortt had satisfied the fourth element of a quantum meruit claim where the trial court's findings of fact established that: (1) Vortt had provided defendant Chevron with confidential seismic services, graphics, and maps in the belief that Vortt and Chevron were going to develop jointly 160 acres for the production of oil and gas, and would not have done so but for this belief; and (2) Chevron was reasonably notified under the circumstances that Vortt expected to join in a mutually satisfactory agreement for the joint production oil and gas from the 160 acres at issue.  *See* <u>Vortt</u>, 787 S.W.2d at 944-45.  Similarly, in the instant case Plaintiff's Vice President Jose Lopez ("Lopez") avers that Plaintiff would not have engaged in months of negotiations and sustained thousands of dollars in costs if Plaintiff had known that Defendant would ultimately deviate from its previous course of dealing by refusing to renew the 1998 Agreement and extend its price quote, thereby rendering Plaintiff unable to complete the sale to the SDN.  *See* Document No. 43 ex. I.

directly, the distributor unsuccessfully sought a commission on the sale, and eventually prevailed on a quantum meruit claim at trial. *See* id. at 863-64.  On appeal the Fifth Circuit affirmed the jury verdict, holding, *inter alia*, that the distributor's efforts in promoting sales and developing the relationship between the manufacturer and third party provided sufficient evidence to support recovery on a quantum meruit theory.  *See* id. at 865-66. Similarly, genuine issues of material fact in this case preclude summary judgment on Plaintiff's quantum meruit claim.

3. Promissory Estoppel

In its live pleading, Plaintiff alleges that Defendant "promised that Plaintiff would be [Defendant's] agent and receive compensation in exchange for [Plaintiff's] services in negotiating the subject transactions with the SDN." Document No. 1 ex. F ¶ XX. Plaintiff further alleges that it relied upon these promises to its detriment by negotiating the basic terms of a Humvee sale that Defendant ultimately prevented Plaintiff from consummating.  *See* id.

Under Texas law, a plaintiff alleging promissory estoppel must establish (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to its detriment.   *See* Pegram v. Honeywell, Inc., 361 F.3d 272, 288 (5th Cir. 2004); English v. Fischer, 660 S.W.2d 521, 524

(Tex. 1983). In the promissory estoppel context, the term "promise" has been defined as "'[a] declaration which binds the person who makes it, either in honor, conscience, or law, to do or forbear a certain specific act, and which gives to the person to whom made a right to expect or claim the performance of some particular thing.'" <u>Traco, Inc., a Three Rivers Aluminum Co. v. Arrow Glass Co., Inc.</u>, 814 S.W.2d 186, 190 (Tex. App.--San Antonio 1991, writ denied)(quoting BLACK'S LAW DICTIONARY 1092 (5th ed. 1979)).

Defendant contends it promised only (1) that Plaintiff could purchase Defendant's vehicles at a quoted price within a stated period of time for resale to SDN; and (2) that Plaintiff would be Defendant's agent with regard to a spare parts proposal. These promises, Defendant argues, provide no support for Plaintiff's theory of recovery in the instant case. Plaintiff concedes it was never expressly told that a new Agreement would be forthcoming, but argues that the parties' previous course of dealing with backdated contracts and extended price quotes supports the existence of a promise. *See* Document No. 43, at 17. Indeed, the "'intention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance.'" <u>Grigson v. Creative Artists Agency, L.L.C.</u>, 210 F.3d 524, 534 (5th Cir. 2000) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 4, cmt. a (1981)).

Plaintiff also points out that Defendant's representatives Bruce Wisler ("Wisler") and Daniels responded to inquiries from Plaintiff's Vice President Lopez about the status of a renewed Agreement by stating that "Legal hasn't done it yet," "I haven't looked at it yet," and "It's on Bruce Wisler's desk." Id. ex. I ¶ 1.[8] Similarly, Cardini avers that he had numerous conversations with Defendant's representatives between February 12, 2001 (the date of the Embassy letter) and February 28, 2001 (the expiration date for the price quote), and that Defendant's representatives never mentioned any problems with Plaintiff's continued representation of Defendant or with Plaintiff's sale of new vehicles to SDN. Document No. 43 ex. F ¶ 11. To the contrary, Cardini states, "they seemed eager that we finalize a deal with the SDN." See id. Furthermore, Cardini avers that on February 23rd, he informed Daniels about his (Cardini's) most recent negotiations and stated that "another price extension would be needed." See id. ¶ 10. According to Cardini, Daniels then told him that "there would be *no problem* with granting an extension." See id. (emphasis

---

[8] Cardini states in his affidavit that Wisler and Daniels "assured Plaintiff on many occasions that the contract would again be renewed for a two-year period." Document No. 43 ex. F ¶ 3. Plaintiff does not rely on this statement to demonstrate the existence of a promise, however, and does not dispute Defendant's claim that the statement contradicts Cardini's prior deposition testimony. Accordingly, Defendant's objection to this affidavit statement is SUSTAINED. Likewise, the uncontroverted summary judgment evidence is that Defendant's alleged agency representation dealt only with a spare parts proposal, and did not extend to the sale presently in dispute. See Document No. 40 ex. C ex. 7.

added).[9] In light of the foregoing, Plaintiff has raised genuine issues of material fact that preclude summary judgment on its promissory estoppel claim.

### 4. Unjust Enrichment

Plaintiff contends that Defendant was unjustly enriched by profiting from the sale of Humvees through Scorpion, because that sale "would not have occurred but for the efforts and expenditures of Plaintiff." Document No. 1 ex. F ¶ XXI. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." Heldenfels Bros., 832 S.W.2d at 41.[10] "Unjust

---

[9] Defendant objects to this statement as contradicting Cardini's deposition testimony, but the cited deposition pages are not both included in the summary judgment record. See Document No. 40 ex. B; No. 44, at 3. Defendant's objection is therefore DENIED. Also, Defendant's objection to paragraph 7 of Cardini's affidavit based on lack of personal knowledge/foundation is SUSTAINED; Defendant's objection to paragraph 14 is DENIED; and Defendant's hearsay objections to paragraph 9 of Cardini's affidavit and paragraph 2.I of Vice President Jose Lopez's affidavit are SUSTAINED to the extent the statements objected to are offered to prove the truth of the matter asserted therein. See Document No. 43 exs. F, I.

[10] Defendant argues that for Plaintiff to recover, it must identify "some basis for the Court to infer a *promise* on the part of Defendant to Plaintiff to pay for the benefit or property in question," a proposition for which Defendant cites Berger Eng'g Co. v. Village Casuals, Inc., 576 S.W.2d 649, 652 (Tex. Civ. App.-- Beaumont 1978, no writ). See Document No. 44, at 15 (emphasis added). Berger, however, simply states that "there must exist between the parties an *implication* that the party performing the services would be paid by the party accepting and benefiting by them." Berger 576 S.W.2d at 652 (emphasis added).

15

enrichment occurs when the 'person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain.'" Villarreal v. Grant Geophysical, Inc., 136 S.W.3d 265, 270 (Tex. App.--San Antonio 2004, pet. denied) (quoting City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc., 736 S.W.2d 247, 250 (Tex. App.--Corpus Christi 1987, writ denied)).

Defendant argues that Plaintiff cannot show any taking of undue advantage, and points out that a finding of unjust enrichment is not warranted "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." Id. (quoting Heldenfels, 832 S.W.2d at 42)(internal quotations omitted)).  Nevertheless, given the summary judgment evidence that Defendant at least impliedly encouraged Plaintiff to continue negotiations even after receiving the Embassy letter--and that Defendant's price quote would probably be extended as usual--genuine issues of material fact preclude summary judgment on Plaintiff's unjust enrichment claim.

B.   Motion to Dismiss

Defendant moves to dismiss the case because of Plaintiff's payment to Defendant of a $500 attorney's fee sanction one week late and Plaintiff's failure to produce a lost tax return

16

identified in its discovery responses, but which was later produced after a copy was procured from a third party. Dismissal of a party's case is the most extreme sanction and is appropriate only in extreme circumstances, which are not present here. A motion to dismiss should not have been filed on the basis of Plaintiff's delinquencies in this case, and Defendant's Motion to Dismiss is therefore in all things DENIED.

In denying the motion to dismiss, the Court does not approve Plaintiff's failure to pay the $500 sanction within the time ordered and cautions Plaintiff's counsel that contempt of Court can and will be punished if necessary with appropriate sanctions.

## IV.   Order

For the foregoing reasons, it is

ORDERED that Defendant AM General, LLC's Motion for Summary Judgment (Document No. 40) is GRANTED IN PART, and Plaintiff CWTM Corporation, d/b/a C & W Exports, LC's claims for tortious interference with an existing contract, tortious interference with a prospective contract, business disparagement, breach of common law duty of loyalty, breach of good faith, breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, and conspiracy are DISMISSED with prejudice. Defendant's Motion for Summary Judgment is otherwise DENIED, and Plaintiff's promissory

estoppel, quantum meruit, and unjust enrichment claims remain for trial.  It is further

ORDERED that Defendant AM General, LLC's Motion to Dismiss (Document No. 50) is DENIED in all things.

The clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 10th day of August, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE